48 CCPA

**Application of Joseph F. HANLON.**
**Patent Appeal No. 6582.**

United States Court of Customs
and Patent Appeals.
Jan. 13, 1961.

Arnold S. Worfolk and Charles A. Harris (Johnson & Johnson, New Brunswick, N. J., Edward B. Beale, George R. Jones, Beale & Jones, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the examiner and holding that claims 23 and 24 of the appellant's application S.N. 343,470 are unpatentable over the prior art. The invention has to do with a container-dispenser for surgical adhesive plaster or cloth-backed adhesive tape, the object being to provide practical means for tearing these materials, which are said to be very difficult to tear by hand, into desired lengths.

Claim 23 is as follows:

"A dispenser adapted especially for use with a roll of hard to sever adhesive tape as, for instance, cloth backed surgical plaster comprising a compartment presenting means for supporting a roll of tape for unwinding, an opening giving access to the compartment and through which the tape is withdrawn from the roll during a dispensing operation, a tape support adjacent the edge of the opening, a thin sheet metal cover member for the opening adapted when in closed position and when a length of tape has been withdrawn to clamp the tape between the cover member and said support, and a tape tearing edge presented at one of the sheet metal edges of the cover member and located when the cover member is in closed position nearer the end of the tape than is the tape support where the tape is clamped by the cover member, said tape tearing edge being generally of concave arcuate shape with its end portions near the edge of the tape sloping tangent to a line making an angle of from five to twenty-five degrees with a line normal to the edge of the tape, and presenting serrations along its arcuate shaped edge pitched within a range of twenty to thirty serrations per inch and with the cutting edges of the individual serrations including between them an angle of from sixty to ninety degrees, said tape tearing edge, when a withdrawn length of tape, extending from the roll in the dispenser and clamped between the cover member and the support, is pulled back against said edge, being adapted to engage the tape initially only against a lateral edge thereof, there-

---

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL,* pursuant to provisions of Section 294(d), Title 28 United States Code.

by to concentrate a tearing force in the vicinity of said lateral edge of the tape."

Claim 24 is the same except that the serrations are described as "oppositely directed in the different longitudinal halves of the tape."

The object is achieved by installing a roll of tape in a rectangular box so that when the cover is raised the length to be cut off may be pulled out over the top edge of the box. The cover is hinged at the end opposite and, when closed upon the projecting tape, will clamp it firmly against the edge of the box. The cover has a serrated tape-tearing edge which engages the tape and tears or cuts it when the tape is pulled in a generally upward direction.

■ Everything so far described is admittedly old in the art, and it appears in United States Patent No. 2,351,781 to Punte, issued June 20, 1944, upon which patent alone the board grounded its rejection. Of the features claimed, the only ones not disclosed by Punte are certain requirements as to pitch, angle, and direction of the teeth, and the shape of the tape-tearing edge of the cover, which is described as being of concave arcuate shape.

The requirements relating to the serrations may be quickly disposed of. It is for the designer to employ teeth which are stout enough to do the job he expects of them, yet pointed enough to cut the tape, and so disposed as to direction as to cut it effectively. The problem as to pitch and angle is merely that the more teeth there are the narrower they will be, and the fewer teeth there are the more obtuse the angle at the point will be, or, in other words, the blunter the tooth is, the stronger it will be, and the more pointed, the weaker. The proper compromise is well within the skill of any competent designer and would be obvious to such person. As to the other new feature, namely, the arcuate shape of the tearing edge, the appellant in his brief, recognizing the rule that a mere change in shape or form is not patentable unless the changed element performs a new function, states his case for patentability as follows:

"In the instant case appellant conceived of providing a dispenser which, in itself, would clamp the tape and automatically concentrate the cutting or tearing force in the vicinity of the edge of the tape so as to initiate tearing at this point regardless of the direction of pull on the tape."

Actually, the alleged concentration of tearing force at the edge of the tape is not a new function—at least it may be new in degree but certainly it is not new in kind. In initiating the tear against a straight edge, the tearing force is almost certain to be concentrated at the first tooth. It is hard to believe that anyone would try to use a straight edge tearing element by pulling uniformly on the entire width of the tape, and there is nothing to show that such a straight tearing edge ever caused the slightest difficulty in tearing the tape.

We have before us in these claims a device whose only possible claim to patentability is the shape given to a tearing edge. Certainly it is obvious enough to vary the shape of cutting or tearing edges in order to improve their function. Such improvement is no more than a difference in degree and in the present case, if there is any difference in degree at all, it is so slight as to be practically negligible. To sum up: As to the tearing edge, the application discloses merely a change of shape without significant change of function, accomplishing nothing in the way of result shown to be new and unexpected, while the provisions relating to the pitch and angle of the teeth are merely so much window dressing involving nothing not obvious to one skilled in the art.

The appellant complains that the board did not accept an affidavit by the inventor, offered to show an unexpected result, stating that, "We have demonstrated that with cloth tape an arcuate cutter

requires 23% less force than is required when a straight cutter is used." No data of comparative tests is offered nor any information given as to how the need for less tearing force was "demonstrated," as, for example, the angle at which the tape was pulled.

■ The board's refusal to allow this statement of the affidavit to affect its decision was fully justified, not only by the lack of data as to comparative tests, but also because, as the board stated,

> " * * * the amount of force that is necessary to tear the average tape is so small that even admitting, arguendo, more force is required with a straight cutting edge, the difference in the forces required between the two cutting edges is for practical purposes negligible and constitutes one of degree only rather than one of kind and, consequently, has no patentable significance."

A saving of 23% of the force required to tear a piece of adhesive tape an inch or two wide is hardly a factor that would even be noticed by the average person or an achievement on which patentability can be predicated.

■ The appellant also contends that the board erred in placing upon him the burden of showing that his device had advantages over, or was superior to, that of the prior art. Undoubtedly, an unexpected superiority or advantage over the prior art may in some cases be persuasive of unobviousness, but if the appellant intends to rely on it as evidence of such, the burden is on him to show it. In this case the appellant urges that his novel cutter produces the unobvious result that the tape is substantially easier to tear. The board was not convinced of this fact nor are we. Certainly, the appellant cannot insist that our failure to be convinced by him has thrown an undue burden on him.

The decision of the Board of Appeals is affirmed.

Affirmed.